## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DUANE MALETSKI, <br> SHARON LOPEZ, <br> FRANCES M. ZICK, <br> and all others similarly situated, <br> OBAMA FOR AMERICA, and <br> DEMOCRATIC NATIONAL COMMITTEE <br><br>     PLAINTIFFS <br><br>     v. <br><br> MACOMB COUNTY REPUBLICAN <br> PARTY, <br> MICHIGAN REPUBLICAN PARTY, <br> REPUBLICAN NATIONAL COMMITTEE, <br> and JOHN DOES #1-100, <br><br>     DEFENDANTS. | Case No. _____ <br><br> **CLASS ACTION** |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  Individual and representative Plaintiffs Duane Maletski, Sharon Lopez, and Frances Zick ("Individual Plaintiffs"), and Plaintiffs Obama for America and the Democratic National Committee (collectively, "Plaintiffs") seek declaratory and injunctive relief against Defendants, and in support, state as follows:

### PRELIMINARY STATEMENT

2.  This complaint seeks declaratory and injunctive relief to challenge the "lose your home, lose your vote" vote-suppression program adopted by the Macomb County Republican Party, in concert with the Michigan Republican Party and the Republican National Committee,

as well as unnamed Defendants who will implement the scheme at polling places in Macomb County and throughout the State.

3.     Republican operatives have announced that they will seek to strip the right to vote of individuals who reside in homes for which a notice of foreclosure has been issued by making challenges on Election Day to each such citizen's right to vote.  This "lose your home, lose your vote" program is part of a broader scheme – misnamed an "election integrity" program – to harass voters and suppress the vote throughout the State of Michigan in the upcoming election on November 4.

4.     The mass and systematic challenge of voters under the Defendant Republicans' "lose your home, lose your vote" scheme will impair the right to vote of Individual Plaintiffs and all others similarly situated.  The presence of an address on a list of foreclosures provides no legitimate basis for challenging a voter's eligibility to vote, and use of such foreclosure lists for mass and systematic challenges can have but one purpose:  to threaten, harass, and intimidate voters whom Defendant Republicans believe are unlikely to vote for their candidates.  The result of the mass challenges envisioned by the "lose your home, lose your vote" scheme will be denial and/or abridgement of the right to vote, indeterminate and inordinate delays at polling places affecting Individual Plaintiffs and all others similarly situated who must suffer through a baseless challenge process (as well as others affected by the diversion of election resources compelled by the mass, baseless challenges of the "lose your home, lose your vote" scheme), and the subjection of Individual Plaintiffs and similarly situated voters to potentially harassing public questioning that is unrelated to their eligibility to vote.

5.      Plaintiffs hereby seek declaratory and injunctive relief to prohibit Defendant Republicans from implementing their "lose your home, lose your vote" scheme and from levying mass challenges to voters based on home foreclosure lists.

## THE PARTIES

6.      Individual and representative Plaintiff Duane Maletski has lived in Warren, Michigan, in Macomb County, for nine years.  He lives at 25165 Audrey Avenue, which he purchased from his mother in 2002 or 2003.  After initially financing the home with a fixed-rate mortgage, he refinanced in 2004 to obtain a lower rate.  When he initially purchased the home, his annual income from his job as a fabricator at a specialty automotive products company was around $45,000, and his mortgage payments were around $1100.  After he refinanced, his payments decreased to $1070.  However, after he was laid off, he began to miss mortgage payments here and there.  His mother occasionally helped him out, but he was reluctant to ask her for more help because she was dipping into her retirement accounts.  He tried to find additional work, but because of chronic back problems has been unable to return to work as a fabricator; instead, he has worked occasional odd jobs and sold things on Craigslist to make money.  Nonetheless, within the last year, he has been in foreclosure three or four times – most recently around July 29.  He is, and at all times relevant hereto has continuously been, lawfully registered to vote at his current address, and has voted regularly in Macomb County elections.  He intends to vote in the upcoming general election on November 4, 2008, but fears that the appearance of his home on a foreclosure list and the Defendant Republicans' "lose your home, lose your vote" challenge scheme will result in infringement of his right to vote.

7.      Individual and Representative Plaintiff Sharon Lopez is 61 years old and for thirty years has lived, on and off, at 7012 Studebaker in Warren, Michigan, in Macomb County.  She

lives there with her husband, and owns the house next door, at 7004 Studebaker. Both houses were once owned by her father, who quit-claimed the deeds to her. Ms. Lopez's son moved into 7004 Studebaker, but after breaking his leg in five places, was laid up for six months and could not pay the rent on that home. Ms. Lopez ultimately took out a second mortgage on that home in 2004; while she thought it was a fixed-rate mortgage, after two years its rate jumped up to over 10 percent. Since her husband was laid off in 2002 from his job as a welder, Ms. Lopez's household's only regular income has been her husband's Social Security retirement income, and they have significant medical bills. Thus, when a fire caused significant damage at the 7004 Studebaker property and her son was forced to move out and stopped paying rent there, Ms. Lopez has fallen behind on the mortgage payments. While she has hired a contractor to get the house in livable condition so it can be rented again, she is behind $3,000 to $4,000 in her mortgage payments. Last month, Ms. Lopez's bank foreclosed on the 7004 Studebaker property that is owned in her name. Ms. Lopez continues to reside at 7012 Studebaker, where she is registered. She has voted regularly from that address and intends to vote in the upcoming presidential election. She fears that the appearance of her home on foreclosure lists and the Defendant Republicans' "lose your home, lose your vote" challenge scheme will result in infringement of her right to vote – particularly since she plans on voting absentee, and thus will not be present to defend her right to vote when the challenge is made.

8. Individual and representative Plaintiff Frances M. Zick lives in Sterling Heights, Michigan, in Macomb County. She grew up at 38216 Medville Drive, and she purchased that house from her parents and moved back into it fifteen years ago. In 2005, she refinanced the home with an adjustable-rate mortgage, but her rate has now risen to around 10%, causing her monthly payments to rise from the approximately $1100 she paid in 2005 to their current $1800

including escrow.  She continues to work, as she has for the past seventeen years, as a cashier in a supermarket, and by May of this year had fallen one payment behind on her mortgage.  After missing one more payment in July, she was notified that she was in default and had to pay $3,520.73.  She missed at least one additional payment after receiving the default notice, but sent the amount listed in the letter through Western Union.  On September 11 she received a letter from the Macomb County law firm of Trott & Trott indicating that her debt was being accelerated.  On September 13, 2008, she received a notice that her home was going to be sold in a mortgage foreclosure sale on October 10, 2008.  Despite the foreclosure proceedings, she continues to reside in her home.  She intends to vote in the upcoming presidential election, just as she did in the 2006, 2004, and 2000 elections.  She fears that the appearance of her home on foreclosure lists and the Defendant Republicans' "lose your home, lose your vote" challenge scheme will result in infringement of her right to vote.

9.  Individual Plaintiffs seek to bring this case as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated as members of a proposed class, defined as follows:

> All persons who have registered or will register to vote in the State of Michigan and who own, or who are registered to vote from, property that has been listed as subject to foreclosure proceedings.

10.  The proposed class is so numerous that joinder of all its members is impracticable.  In Macomb County, there have been 11,435 sheriff deeds and tax forfeitures so far in 2008.

11.  Virtually all the issues of law and fact in this class action are common to the class and include the following:

> Whether Defendant Republicans' "lose your home, lose your vote" scheme of engaging in mass and systematic challenges of the right to vote based on the presence of the voter's

residential voting address on a list of foreclosed homes infringes on the right to vote secured by the U.S. Constitution and federal law.

12. Individual Plaintiffs' claims are typical of the class members' claims. Individual Plaintiffs and all other members of the Class will have their fundamental right to vote infringed in the event that Defendants are permitted to use lists of foreclosed properties as a basis for challenging voters' registration.

13. Individual Plaintiffs can and will fairly and adequately represent and protect the interests of the class and have no interests that conflict with or are antagonistic to the interest of class members. No conflict exists between the Individual Plaintiffs and class members.

14. A class action is superior to any other available method for the fair and efficient adjudication of this controversy, and common questions of law and fact predominate over any individual questions that may arise.

15. Plaintiff Obama for America is a political campaign operating in the State of Michigan. It is headquartered in Chicago, Illinois, and has an office in Michigan and offices across the country.

16. Plaintiff Democratic National Committee is an unincorporated association that is the governing body of the Democratic Party of the United States. It is the "national committee" of the Democratic Party within the meaning of the Federal Election Campaign Act of 1971 as amended, 2 U.S.C. § 431(14). The DNC's headquarters and principal place of business are located at 430 S. Capitol St. SE, Washington, DC.

17. The Republican Party is one of the two major political parties in Michigan within the meaning of Michigan Election Law, Mich. Comp. Laws §168.16. Defendant Macomb County Republican party is a county committee of the Republican Party in Michigan under

Michigan Election Law, Mich. Comp. Laws §168.602; its office is located at 48711 Van Dyke Ave., Shelby Township, Michigan.

18.    Defendant Michigan Republican Party is the state central committee of the Republican Party of Michigan constituted under Michigan Election Law, Mich. Comp. Laws §168.597.  The Michigan Republican Party is located at Secchia-Weiser Michigan Republican Center, 520 Seymour St., Lansing, Michigan.

19.    Defendant Republican National Committee is the governing body of the Republican Party of the United States and is the "national committee" of the Republican Party within the meaning of the Federal Election Campaign Act of 1971 as amended, 2 U.S.C. § 431(14).  The RNC operates and does business in all 50 states, including the State of Michigan, and the District of Columbia.  The RNC's headquarters and principal place of business are located at 310 First Street, Washington, D.C.  The Michigan Republican Party is the state party duly recognized and treated by the RNC as the state Republican Party for the State of Michigan under the Rules of the RNC.

20.    Defendants Macomb County Republican Party, Michigan Republican Party, and, on information and belief, the RNC ("Defendant Republicans") are acting in concert and with express and implicit agreement to engage in "election integrity" schemes – a euphemism for voter suppression – including, but not limited to, the "lose your home, lose your vote" scheme that is the subject of this Complaint.  Defendant Republicans stated in the press that they are taking overt steps, including the acquisition or preparation of lists of homes subject to foreclosure proceedings and public announcement – that is, the beginning of the suppression effort – to accomplish their voter suppression goals.

21.     Defendants John Doe Nos. 1-100 are individuals, who have been or may be selected by Defendant Republicans, to serve as challengers on Election Day and who will implement the Defendant Republicans' "lose your home, lose your vote" scheme to harass and intimidate voters in Macomb County, Michigan.

## JURISDICTION AND VENUE

22.     This case is brought under 42 U.S.C. §§ 1983 and 1985 and the First and Fourteenth Amendments to the U.S. Constitution.  This Court has jurisdiction to hear this action under 28 U.S.C. §§ 1331 and 1343.  Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the real and immediate harm faced by Plaintiffs is threatened in this judicial district, and at least one defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

*History of Defendants' Voter Suppression Tactics*

24.     Defendant Republicans have a long history of engaging in coordinated, systematic campaigns to suppress and deny the right to vote of American citizens.  Those campaigns are often targeted at various racial groups, language minorities, or individuals of low or modest economic circumstances whom Defendant Republicans believe are unlikely to support them in political campaigns.

25.     The instances of such voter-suppression tactics are many, but a few examples should suffice.  In 1981, Defendant RNC, working with a state party and under the guise of a "Ballot Security Task Force," created lists of voters in predominantly African-American precincts and sent them letters in the mail.  If a letter came back as undeliverable (approximately

45,000 letters), Defendant RNC compiled a challenge list to attempt to remove all such individuals from the voter rolls. The "Task Force" allegedly used off-duty sheriffs and police officers to watch polling places and posted signs to warn voters that the "Task Force" was patrolling and that it was a crime to violate the election laws. Following commencement of a lawsuit by the Democratic National Committee ("DNC"), Defendant RNC was subject to a consent decree prohibiting them from undertaking such activities where the purpose or significant effect of such activities is to deter qualified voters from voting. Consent Order, *Democratic National Committee v. Republican National Committee*, CA No. 81-3876 (D.N.J., entered Nov. 1, 1982).

26.     Four years later, in 1986, Defendant RNC engaged in similar "ballot security" tactics in Louisiana, attempting to have 31,000 voters removed from the voter registration rolls simply because a piece of mail had been returned. As a result of these voter-suppression tactics, the RNC was again forced into court, and the New Jersey consent decree was re-opened and extended to prohibit the RNC, its agents, employees, and parties acting in concert from engaging in direct-mail campaigns targeted at voters on voter-registration lists to a) use the letters returned to compile vote challenge lists; b) make such challenges; and c) deter registered voters from voting. The consent decree prohibits Defendant RNC from engaging in such activities without prior approval by the court. Settlement Stipulation and Order of Dismissal, *DNC v. RNC*, CA No. 86-3972 (D.N.J. entered July 27, 1987).

27.     In 2004, the Republican Party of Ohio, acting in concert with the Defendant RNC, engaged in the same tactics once again, compiling a list of more than 35,000 voters in the State of Ohio and seeking to have all 35,000 removed from the voter-registration rolls on the eve of the election. This voter suppression scheme led to mass chaos in the Ohio election process, with

election officials across the State being diverted from activities essential to the orderly administration of elections to hold "hearings" on each of the 35,000 challenges – all of which were based on nothing other than the return of a single postcard (many of which were misaddressed). On the eve of the 2004 election, the United States District Court for the Southern District of Ohio found the Republican's mass challenge process and the resulting chaos a violation of the Due Process Clause and enjoined the conduct of these hearings. *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), *aff'd*, 388 F.3d 546 (6th Cir. 2004). Based on the involvement of the RNC in this challenge program, the District Court for the District of New Jersey also found that this mass challenge program violated the 1982 Consent Decree and enjoined the RNC, its officers and agents from using their challenger list, based on the returned mailings, in the November 2004 general election. Order, *DNC v. RNC*, CA No. 81-3876 (D.N.J., entered Nov. 1, 2004). The Court's order was stayed by the Third Circuit en banc, without opinion. 2004 U.S. App. LEXIS 22689 (3d Cir. 2004).

28.     Although mass challenge programs such as these are often referred to with benign sounding names such as "ballot security" or "election integrity" programs, they have but one purpose – to discourage, intimidate, and suppress the vote of individuals whom Defendant Republicans believe are unlikely to vote for them. The systematic attempt to engage in voter suppression by creating massive lists of voters and challenging them on the claim that the voters do not reside in the locations listed on the voter registration rolls has a name; it is called "caging." Defendant Republicans engage in this conduct precisely because they believe it works: Directly or indirectly, it strips the fundamental right to vote from individuals whom Defendant Republicans believe are unlikely to vote for their candidates.

29.     Federal law provides substantial protection to prevent voters from being removed from rolls of registered voters as an election is approaching.  The National Voter Registration Act, 42 U.S.C. § 1973gg-6, prohibits States from engaging in any effort to systematically remove voters from the list of eligible voters unless that effort was i) was completed more than 90 days before the date of the federal election and ii) is uniform (i.e., applied to everyone in the jurisdiction), non-discriminatory, and in compliance with the Voting Rights Act of 1965.  42 U.S.C. § 1977gg-6.  Through the mass, systematic "lose your home, lose your vote" challenge process, Defendant Republicans are trying to do what federal law expressly prohibits state election officials from doing (even if they were to do it in a neutral and non-discriminatory fashion, which this is not):  purge the voter rolls of voters on election day itself, thereby infringing on their ability to cast a ballot for federal office.

*Voter Suppression circa 2008*

30.     Defendant Republicans in this case appear to have plotted a new type of voter suppression tactic, similar to caging, but which exploits the devastating impact of the Nation's home-mortgage crisis and threatens directly the rights of those teetering on the edge of losing their homes.

31.     The foreclosure crisis in the United States has reached epidemic proportions, especially in Michigan.  The sub-prime lending crisis has led to thousands of Americans being unable to pay their mortgages, leaving them at risk of foreclosure.

32.     The mortgage crisis has hit the Nation, Michigan, and Macomb County in devastating fashion.  According to RealtyTrac's July 2008 U.S. Foreclosure Market Report, foreclosure filings were reported by 272,171 U.S. properties in July 2008, 8% more than the

prior month and 55% more than in July 2007.  In July 2008 alone, one of every 464 U.S. households received a foreclosure filing.

33.     In Michigan, there were 2,174 foreclosure filings in July alone.  In Macomb County, there have been 11,435 sheriff deeds and tax forfeitures so far in 2008.  Approximately 1 out of 285 households in Macomb County has been the subject of a foreclosure filing.

34.     In the face of such a crisis and the distress among low- and middle-income voters, Defendants have sought to exploit the difficulties facing Individual Plaintiffs and others similarly situated for their own political gain.  According to press accounts, the chairperson of the Republican Party in Macomb County intends for Republicans to challenge the right to vote of Michigan residents whose house has been the subject of a foreclosure notice.  James Carabelli, quoted in the Michigan Messenger, said "[w]e will have a list of foreclosed homes and will make sure people aren't voting from those addresses."  Eartha Jane Melzer, *Lose Your House, Lose Your Vote*, Michigan Messenger, Sept. 10, 2008, http://www.michiganmessenger.com/4076/lose-your-house-lose-your-vote.  The Defendants' threat to Plaintiffs is thus not hypothetical: Defendant Republicans have already announced through the news media that they are acquiring foreclosure lists and intend to use them.

35.     The "lose your home, lose your vote" scheme being perpetrated by the Macomb County Republicans is part of a broader state and nationwide campaign by the Republican Party to suppress the vote.  Press accounts report that the Michigan Republican Party, working with the national Republican party, intends to engage in a coordinated "election integrity" program designed to stop people from voting, including because they live in homes for which foreclosure notices have been filed.  A press report indicates that the Chairman of the Republican Party in Franklin County, Ohio, where the state and national parties' 2004 "caging" operation was shut

down by a federal court, has similarly indicated that Republicans have not ruled out challenging voters due to the existence of a foreclosure notice. Robert Vitale, *Foreclosed-on Voters Using Old Addresses Could Snag Election*, Columbus Dispatch, July 6, 2008, at 1A.

*The Foreclosure Process*

36.     At the core of Defendant Republicans' scheme is the notion that appearance of an address on a foreclosure list means there is good reason to believe that a registered voter listed on the voter registration rolls with such an address no longer can vote at the local polling place and/or is not properly registered to vote. That is simply wrong. Placement of a house on a public foreclosure notice says nothing about whether an individual who has previously registered at that address remains eligible to vote. Thus, appearance on a foreclosure list provides no rational basis on which to challenge and deter a registered voter's right to vote.

37.     First, that a foreclosure notice has been filed against a particular property says nothing about who resides there. Foreclosure addresses ownership, not residence, which determines the appropriate location for voting. There is no basis, for example, for challenging the right to vote of all of the renters who reside in an apartment building that has been foreclosed. Yet Defendant Republicans' mass challenge program would burden all of these voters' rights to vote by subjecting them to a mass challenge process.

38.     Second, even if the resident and the owner of a property are one and the same, publication of a foreclosure notice begins foreclosure proceedings, but it does not require anyone to leave his or her home. It is commonplace throughout the United States for homeowners who are unable to make mortgage payments to remain in their homes well after foreclosure proceedings have begun in order to negotiate with lenders and attempt to refinance. In Michigan, homeowners may have up to one year and four weeks following initial notice of

foreclosure before they must actually leave the home, even assuming the foreclosure proceeds to conclusion without a redemption or other agreement. As a result, there is no reason to believe that someone who has received a foreclosure notice has actually left his or her home.

39.     The most common method of foreclosure in Michigan is by advertisement. Under this type of foreclosure, the lender must advertise the foreclosure sale in the local newspaper at least once a week for four consecutive weeks prior to the sale. Mich. Comp. Laws § 600.3208. Michigan law does not require residents to leave their homes once a foreclosure notice has been published, and there is no reason to think that anyone would change residences just because notice of foreclosure has been published in the newspaper.

40.     Even after a foreclosure sale has taken place, Michigan homeowners have a right to stay in their homes while they attempt to "redeem" their property by paying the foreclosure sale price plus interest. Indeed, Michigan law actually encourages people to remain in their homes after the foreclosure sale by reducing the time period for redemption if the foreclosed property is found to have been abandoned. In all cases in which the mortgagee chooses to remain in his or her home, the right of redemption lasts six months after the foreclosure sale, and in many cases may last a full year. *See* Mich. Comp. Laws § 600.3240(7)-(12). Only after this redemption period has passed does the deed purchased at the foreclosure sale take effect. *Id.* §§ 600.3232, 600.3236. Therefore, in many cases a person whose home has been foreclosed will not be required to move out until more than a year after the first foreclosure notice was issued.

41.     In addition, even if a voter has moved from an address, the Michigan election law establishes a grace period to permit voters to vote at their old precinct based on their old address. Under Michigan law, voters who move within the city or town are still eligible to vote in their

old precinct after they move, and voters who move to a new city or town within 60 days of an election are still eligible to vote in their old precinct even after they move. Mich. Comp. Laws § 168.507a(1) & (2). That is, Michigan law provides for a voter who was registered to vote in Roseville, and who moved within Roseville, to vote at the voter's old precinct. Similarly, Michigan law provides for a voter who was registered to vote in Macomb County but moved from Macomb County on September 5, 2008, the beginning of this year's relocation grace period, to vote at the voter's old precinct for the November 4 election.

42. Between the four-week foreclosure notice period that must precede any foreclosure sale, the 6- to 12-month redemption period in which a homeowner may continue to reside in a foreclosed home that has been sold, and the 60-day relocation grace period, a voter whose home appeared in a foreclosure notice on or after August 8, 2007 may well be entitled to vote in her original precinct in the November Election – even assuming that the foreclosure went forward, the home was sold, the homeowner did not purchase it during the redemption period, and the homeowner moved outside the town. Huge numbers of voters whose homes are foreclosed and are forced to move, and are living with friends or family, are still eligible to vote. Of course, in many cases the foreclosure process will have been stopped at some point as the homeowner comes to an agreement with the lender.

*The Election-Day Challenge Process*

43. Defendant Republicans seek to implement their "lose your home, lose your vote" scheme by acting under those provisions of Michigan law which authorize political party "challengers" to be part of the State's election machinery. On Election Day, Michigan law provides for "challengers," appointed by political parties or other organizations, to observe election procedures, watch for improper activities, and challenge the voting rights of ineligible

voters.  Mich. Comp. Laws § 168.733(1).  The board of election inspectors provides space for the challengers at the polls, during both the casting of ballots and the canvass of votes.  *Id.* § 168.733(1).

44.     State law empowers challengers, as part of the election machinery, to have an immediate and direct impact on the people who are challenged.  When a voter is challenged when there are several voters in line, Michigan law provides for the "challenged person shall stand to one side until after unchallenged voters have had an opportunity to vote, when his case shall be taken up."  *Id.* § 168.728.  Poll workers may thus force particular voters to wait, for no reason other than that a challenger has picked them out, for as long as it takes to let the other voters pass before resolving the challenge.

45.     To resolve a challenge, Michigan law provides for the voters to be questioned to determine the voter's eligibility.  Mich. Comp. Laws § 168.729.  The "lose your home, lose your vote" scheme adopted by the Defendant Republicans demonstrates that it is their intent to attempt to use this challenge process to ensure that voters are asked publicly about their appearance on a foreclosure list, the foreclosure of their home, and personal matters that have absolutely nothing to do with the eligibility of the voter to vote.  Once a challenge is initiated, a voter who refuses to answer questions risks being denied the right to vote.  Mich. Comp. Laws § 168.729.  The law also permits challengers to contest the eligibility of citizens who vote absentee and who will not even be present to address any questions.  Mich. Comp. Laws § 168.733(1) & (2).

46.     Michigan law does, however, limit the challengers' ability to challenge individuals' voting rights, permitting challenges only to a voter "who the challenger has good reason to believe is not a registered elector."  Mich. Comp. Laws § 168.733(1)(c).  As discussed

above, the appearance of a house on a foreclosure list provides no rational basis for challenging a voter and thus does not give a partisan challenger a "good reason to believe" that the voter is not qualified to vote. The sole purpose of engaging in such mass, systematic challenges is to intimidate voters from showing up or, if they do, to attempt to humiliate them publicly and thus suppress the right to vote of individuals whom Defendant Republicans do not believe are likely to support them – but who will vote for candidates supported by Obama for America and the Democratic National Committee.

*The Harm to Plaintiffs*

47.     The Constitution of the United States protects the right of all qualified citizens to vote in elections for federal office. The right is fundamental, one of the most important in our democratic society, and is protected by Articles I and II of the Constitution, the First and Fourteenth Amendments, and numerous federal statutes. Any burden on it, any infringement of it, any threat to it demands a remedy.

48.     Mass challenges based on foreclosure notices will infringe on the fundamental right of Individual Plaintiffs and all others similarly situated to cast their ballot for multiple reasons. First, mass challenges based on irrelevant information will intimidate voters from even going to the polls if they fear that they will face scrutiny about their financial situation and the status of their mortgage payments. Second, mass challenges based on foreclosure lists erect additional hoops – which have no rational basis – for voters to jump through in order to vote. Such obstacles are not legitimately connected with voter qualifications or eligibility and serve no objective other than to impose an undue burden on, and therefore suppress, the vote. Third, mass challenges will result in some voters being improperly denied the right to vote on Election Day, either because they will not be able to wait the indeterminate amount of time to go through the

17

mass challenge process or will fear having to answer intrusive questions that Republican challengers will insist be asked. Fourth, mass challenges will clog the polling places, leading to long lines in economically distressed neighborhoods and making it more difficult for Individual Plaintiffs and all voters to cast their ballots, thereby impinging on the right to vote for no legitimate purpose and interfering with the orderly administration of the electoral process.

49. Plaintiffs Obama for America and the Democratic National Committee are similarly harmed. Interference with the voting rights of those who intend to vote for candidates supported by these organizations is a clear harm not only to the organizations themselves, but to the millions of voters nationwide who have chosen to associate themselves with Obama for America and the DNC, and on whose behalf Obama for America and the DNC are conducting comprehensive voter registration and voter mobilization efforts in Michigan and around the country. In support of these voters and the registration and mobilization programs conducted for their benefit, Obama for America and the DNC are joining the Individual Plaintiffs in their fight against the Republicans' "lose your home, lose your vote" strategy.

50. The sole purpose for using foreclosure lists as a basis for mass challenges is to prevent Michigan voters whom Defendant Republicans believe are unlikely to vote for their candidates from voting and thereby to deprive them, directly or indirectly, of their right to vote.

*Recent Statements by Defendant Republicans*

51. After creating a firestorm in the state of Michigan by announcing their "lose your home, lose your vote" voter suppression scheme, Defendant Republicans have now said, variously, that they "have no plans to do anything," http://www.michiganmessenger.com/4231/ republicans-recant-plans-to-foreclose-voters-but-admit-other-strategies; that they are "unfamiliar with" any "lose your home, lose your vote" scheme, http://www.michiganmessenger.com/4231

/republicans-recant-plans-to-foreclose-voters-but-admit-other-strategies; that they will not engage in the conduct alleged by this complaint, http://www.freep.com/apps/pbcs.dll/ article?AID= 2008809120346; and that they intend to engage in traditional caging (using returned mail to make en masse challenges to voters before or at the polls), http://www.michiganmessenger.com /4231/republicans-recant-plans-to-foreclose-voters-but-admit-other-strategies – the very unlawful activity which the Defendant RNC and its agents are forbidden to undertake under a preexisting consent decree and in which the Ohio Republican Party was forbidden to engage in 2004.

52.     These public relations maneuvers under pressure, which sow further voter confusion while sending who-knows-what instructions to party operatives, provide Plaintiffs and those similarly situated little comfort when compared with the Defendant Republicans' clear statements on the record of their plans and their long history of voter suppression tactics.  The media outlet that broke the story initially has confirmed that it stands by the account of the GOP's clear statement that it would use the foreclosure notices.  Jefferson Morley, *Messenger Rejects GOP Plea for Retraction*, Michigan Messenger, Sept. 12, 2008, http://www.michigan messenger.com/4313/messenger-rejects-gop-plea-for-retraction.  Indeed, former GOP operatives have subsequently confirmed the plan's usefulness, calling it "a very smart thing to do," and have explained that going after foreclosure victims is tactically designed to target voters who would not support the Defendant Republicans' candidates.  *See* Eartha Jane Melzer, *Former GOP Operative Explains Why Republicans Will Use Foreclosure Lists To Block Voters*, Michigan Messenger, Sept. 15, 2008, http://www.michiganmessenger.com/4414/former-gop-operative-explains-why-republicans-will-use-foreclosure-lists-to-block-voters.

53.    Reports of similar considerations in Ohio suggest a national program.  In fact, in hastily responding to public pressures with a denial of the scheme alleged here, a counsel for GOP challengers acknowledged to the press that the party intended to engage in "caging":  "I think so.  I know this has been done in years past."  Eartha Jane Melzer, *Lose Your House, Lose Your Vote*, Michigan Messenger, Sept. 10, 2008, http://www.michiganmessenger.com/4076/lose-your-house-lose-your-vote.

54.    Even the Macomb County Clerk, Carmilla Sabaugh, has concluded that the Republicans' informal denials are insufficient and has noted that public confusion resulting from the Defendant Republicans' statements on the "lose your home, lose your vote" scheme.  After hearing multiple concerns from concerned voters, the Clerk concluded that it was necessary to issue a press release on September 12 to try to reassure voters that "[c]itizens whose homes are foreclosed still have the right to vote!"  However, she expressed concern that she was powerless to stop the "lose your home, lose your vote" strategy:  "The lists are public and if the alleged GOP plan is for real a county register of deeds would have no authority to stop Republicans from using foreclosure lists to challenge voters at the polls."  She also cited a recent lawsuit, argued by GOP lawyers, that prevented the Clerk's Office from mass mailing absent voter applications to all senior citizens within a city or township.  *See* Carmella Sabaugh, Press Release, *You Do Not Have To Own Property In Order To Vote, at Least Since 1850* (Sept. 12, 2008).  An enforceable judgment on the record in this matter would go much farther to protect the rights of the group of voters whom Defendant Republicans have said they seek to disenfranchise.

**FIRST CAUSE OF ACTION**
**(Violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments)**

55.    Plaintiffs reallege each allegation contained in each of the paragraphs above as if fully set forth herein.

56. In exercising powers specifically conferred by Michigan statute, in a position for which powers will be exercised in a physical location, the polling place, at which they can and will be present only by virtue of the state statute, Defendants and/or their agents will be acting under color of state law when challenging a voter's eligibility to vote at the general election in Michigan on November 4, 2008.

57. Upon information and belief, Defendants have publicly stated that they intend to challenge voters' eligibility based on foreclosure of the voters' residences.

58. Defendants' challenge of Individual Plaintiffs' eligibility on the basis of foreclosure will place an undue burden on Plaintiffs' fundamental rights in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Absent injunctive relief, plaintiffs are likely to suffer both the particularized injury of the loss of their vote in the November 4, 2008 election and the concrete harms that go with it.

## SECOND CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1985(3))

59. Plaintiffs reallege each allegation contained in each of the paragraphs above as if fully set forth herein.

60. Section 1985(3) of Title 42 prohibits private parties from conspiring to deprive a class of voters of the equal protection of the laws and from conspiring to intimidate citizens who are lawfully entitled to vote from giving their support or advocacy in a legal manner in any election for Federal office.

61. On information and belief, Defendants here entered into an agreement to intimidate and deny voters whose names have appeared on a foreclosure list their right to vote in the November 4, 2008 General Election. Defendants singled out the class of voters whose homes are being foreclosed because they believed that those voters, who are suffering the most

from current economic difficulties, do not support Republican candidates. Defendants are thus preparing lists of voters or addresses corresponding to foreclosure notices and further discussed plans for challenging voters whose homes have appeared in those notices. They have further spoken publicly about their plans, with the intent of both creating a false impression that voters whose homes have appeared on foreclosure notices are not eligible to vote and of intimidating voters from showing up to vote, for fear that they will be forced to publicly discuss their foreclosures in order to win back their right to vote. Those actions, just as Defendants intended, have intimidated voters, including Individual Plaintiffs, and threaten to discourage them from performing their constitutionally protected rights.

62.     Section 1985(3) provides its own right of action.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request of this Court the following equitable relief:

A. An order certifying that the action may be maintained as a class action and appointing Individual Plaintiffs and Individual Plaintiffs' undersigned counsel to represent the class;

B. A temporary, preliminary, and/or permanent order, prohibiting the Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, from challenging Michigan voters on the basis of the presence of particular property on a listing of foreclosure filings;

C. An order declaring that the presence of a particular property on a listing of foreclosure filings is not a reasonable basis on which to lodge a challenge to a

voter's registration and a systematic plan to challenge such voters at the polls violates federal law;

D.  Attorney fees and costs of this litigation pursuant to 42 U.S.C. § 1988, 42 U.S.C. 1973gg-9(c) or any other valid basis;

E.  Such other and further relief as this Court may deem necessary or proper.

Dated:  September 16, 2008                    Respectfully submitted,


        /s/James R. Bruinsma
James R. Bruinsma (P48531)
MYERS NELSON DILLON & SHIERK, PLLC
125 Ottawa Ave., N.W.  Suite 270
Grand Rapids, MI  49503
Email:  jbruinsma@mnds-pllc.com
Tel.:  616-233-9640
Fax:  616-233-9642
*Counsel for individual plaintiffs*


        /s/with consent of Mary Ellen Gurewitz
Mary Ellen Gurewitz (P25724)
SACHS WALDMAN, P.C.
1000 Farmer St.
Detroit, MI  48226-2899
Email:  megurewitz@sachswaldman.com
Tel.:  313-965-3464
Fax:  313-965-4602
*Counsel for Obama for America and*
*Democratic National Committee*

OF COUNSEL:

Robert F. Bauer
General Counsel, OBAMA FOR AMERICA
607 Fourteenth St. N.W.
Washington, DC  20005
Tel.:  202-638-6600
Fax:  202-434-1690
*Counsel for Obama for America*

Joseph E. Sandler
General Counsel, DEMOCRATIC NATIONAL COMMITTEE
SANDLER, REIFF & YOUNG, P.C.
300 M St., SE  Suite 1102
Washington, DC  20003
Tel.:  202-479-1111
Fax:  202-479-1115
*Counsel for Democratic National Committee*